UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| TRILEGIANT COPRORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 3:02 CV 2237 (MRK) |
| ) | |
| BP PRODUCTS NORTH AMERICA INC., ) | |
| ) | September 19, 2003 |
| Defendant. ) | |

## AMENDED COMPLAINT

The Plaintiff, Trilegiant Corporation ("Trilegiant"), by and through its attorneys, Cummings & Lockwood, LLC, as and for its Amended Complaint against the Defendant, BP Corporation North America, Inc. ("BP"), respectfully alleges as follows:

### THE PARTIES, JURSIDICTION AND VENUE

1. Plaintiff Trilegiant Corporation, successor-in-interest to SafeCard Services, Inc., is a Delaware Corporation with its principal place of business located at 100 Connecticut Avenue, Norwalk, Connecticut. Trilegiant is the premier provider of membership-based travel, shopping, health, dental, entertainment and consumer protection services.

2. Defendant BP Corporation North America, Inc., f/k/a BP Amoco Oil Company and f/k/a BP Oil Company ("BP"), is a Delaware Corporation with its principal place

of business located at 200 East Randolph Drive, Chicago, Illinois. BP, among other things, is a provider of gasoline and credit card products.

3.     This Court has subject matter jurisdiction over this matter. Personal jurisdiction over BP is proper as BP has purposefully availed itself of the laws of this State and of the privileges of conducting business and other activities here. BP is registered with the Connecticut Secretary of State. Venue is proper in this judicial district pursuant to <u>Conn Gen. Stat.</u> §§51-345(a), (b) and (c).

## THE AGREEMENT

4.     On August 3, 1992, Trilegiant, as Safecard Services Inc., entered into a written agreement with BP Oil Company ("the Agreement"). EXHIBIT 1.

5.     The Agreement provided that Trilegiant would use its expertise and capabilities to market and provide a co-branded Trilegiant membership club, called the BP Horizon Card Program (the "Horizon Club"), to existing credit card customers of BP, as well as potential new credit card customers of BP. SEE EXHIBIT 1 AT ¶ 1.

6.     In return, BP would provide Trilegiant with the names and addresses of its existing credit card customers. EXHIBIT 1 AT ¶ 6.

7.     The parties further agreed that during *and after* the term of the Agreement, the parties would share in the Profits, as defined by the Agreement, generated by the jointly created Horizon Club. EXHIBIT 1 AT 3, 3(d), and 15.

8.  As set forth in Exhibit B of the Agreement, the Horizon Club was a membership club that BP partnered with Trilegiant to provide as an enhancement to either a BP-issued MasterCard or Visa Card. Membership benefits of the Horizon Club included 20% oil change rebates, a travel reservation service, 5% travel rebates, emergency cash, emergency airline tickets, common carrier life insurance, emergency message service, credit card protection, document registration, lost key return service, and car rental discounts. EXHIBIT 1.

9.  Horizon Club members were charged an annual membership fee of $25.00. Horizon Club membership fees were billed on the members' BP-issued Mastercard or Visa Card.

10. The Agreement provided that BP and Trilegiant shared in the Horizon Club membership fee revenues. Pursuant to the Agreement, BP and Trilegiant divided the membership fee "profits" of the Horizon Club with 57% of the profits to BP and 42.5% of the profits to Trilegiant. EXHIBIT 1 AT ¶ 3. "Profit" is defined by the Agreement as gross Horizon Club sales, less cancellations, credits and refunds and less certain specified costs incurred by Trilegiant. EXHIBIT 1 AT ¶¶ 3 (A) - (C).

11. The Agreement provided that, *during and after the Term of the Agreement*, Trilegiant and BP were required to reconcile the membership billings and determine Profits, as defined by the Agreement, to be shared pursuant to the provisions of the Agreement. EXHIBIT 1 AT ¶ 3(d) and 9.

12.  The only provision in the Agreement relieving BP of its obligation to share Profits with Trilegiant requires a material breach of the Agreement by Trilegiant. EXHIBIT 1 AT ¶ 15 (d) (ii).

## THE HISTORY OF THE HORIZON CLUB

13.  Pursuant to the Agreement, Trilegiant was responsible for designing, creating, printing, and mailing of all Horizon Club solicitation and membership materials to existing and potential BP credit card customers.

14.  From August 15, 1992 to August 15, 2000, Trilegiant solicited existing and potential credit card customers pursuant to the Agreement resulting in the enrollment of over 85,000 Horizon Club members.

15.  Once a member was approved and enrolled in the Horizon Club, Trilegiant sent the member a "fulfillment kit" created, designed and copyrighted by Trilegiant. The "fulfillment kit" contained information regarding Horizon Club benefits and set forth the terms of the Horizon Club membership.

16.  Included in the materials provided to each and every Horizon Club member was an agreement entitled "BP Horizon Service Membership Terms and Conditions." EXHIBIT 2 (HEREINAFTER "MEMBERSHIP AGREEMENT"). The Membership Agreement stated in pertinent part:

> AGREEMENT made between [Trilegiant], a Delaware Corporation with offices at 707 Summer Street, Stamford, Connecticut, 06901, providing a service called BP Horizon Service, called "BHS," and the person specified on the accompanying BP Horizon Membership Card.

EXHIBIT 2. The Membership Agreement set forth the terms of service, use, liability, governing law, arbitration, membership fee, renewals and right to cancel between Trilegiant and the Horizon Club member. EXHIBIT 2.

17.  Trilegiant was solely responsible for administering the Horizon Club and servicing its members. Trilegiant provided all Club benefits directly to Horizon Club members. Horizon Club members contacted Trilegiant directly via 1-800-HOT-LINE for general information and customer service. For travel services, Horizon Club members contacted Trilegiant at 1-800-832-5832. For written inquiries, Horizon Club members contacted Trilegiant directly at Trilegiant's offices at 3001 E. Pershing Blvd., Cheyenne, WY 82001-5786.

18.  All of the materials sent to Horizon Club members were created, designed, copyrighted and mailed by Trilegiant.

-5-

19.     On or around March 19, 1996, BP and Trilegiant amended the Agreement to provide, in pertinent part, that the parties agreed to divide the Profits from first time and renewal membership fees of all Horizon Club members (existing and future) 63.5% to BP and 36.5% to Trilegiant. EXHIBIT 3, AMENDMENT TO AGREEMENT BETWEEN BP OIL COMPANY AND SAFECARD SERVICES, INC. ("AMENDMENT TO AGREEMENT").

20.     On October 27, 1999, Trilegiant gave notice of its intent to terminate the Agreement effective August 15, 2000 pursuant to paragraph 14 of the Agreement. Pursuant to the Agreement, termination "for any reason whatsoever" relieved Trilegiant of its obligation to solicit *new* members into the Horizon Club. EXHIBIT 1 AT ¶ 15(a).

21.     Pursuant to the Agreement, as amended, BP continued to pay Trilegiant its 36.5% share of the Profits of the renewal membership fees for existing Horizon Club members. EXHIBIT 1 AT ¶ 15(d).

22.     From August 15, 2001 to June 2002, Trilegiant continued to administer the Horizon Club program and to provide the Horizon Club benefits to the existing Horizon Club members.

23.     On July 26, 2001, BP represented to Trilegiant that effective November 1, 2001, it would discontinue the BP Horizon and BP Horizon Visa Card member programs over a period of twelve months beginning on November 1, 2001 and completing on October 31, 2002. EXHIBIT 4, LETTER FROM BP TO TRILEGIANT DATED 7/26/01.

24.  Pursuant to the Agreement, if BP discontinued the Horizon Club Program "altogether" by informing then-existing Horizon Club members that the Program was being discontinued, BP's continuing obligations to Trilegiant for Profit payments resulting from renewal revenues would cease. EXHIBIT 1 AT ¶ 15(e). However, the Agreement specifically provided that if BP did not discontinue the Horizon Club program, its obligations to Trilegiant for Profit payments from renewal revenues continued. EXHIBIT 1 AT 15(d).

25.  In the July 26, 2001 letter, BP represented to Trilegiant the following:

> When [Horizon Club] members become eligible for monthly renewal, they will be notified that the Horizon program has been discontinued and *they will be offered the new BP Multicard Program. The card members will be solicited for the new program, and this will not be an automatic succession.*

EXHIBIT 4.

26.  Likewise, in a letter dated May 1, 2002, BP represented to Trilegiant that it was discontinuing the BP Horizon Club Program and stated:

> BP has now developed and is marketing a new fee card product called the BP Multicard . . . we plan *to offer* the existing fee cardholders (from both the BP and Amoco portfolios) the new BP Multicard and cancel all former card programs.

EXHIBIT 5, LETTER FROM BP TO TRILEGIANT DATED 5/1/02.

27.  Upon information and belief, the representations by BP to Trilegiant regarding the solicitation of the Horizon Club members was false. Upon information and belief, BP did not solicit Horizon Club members for its new program but rather appropriated the

-7-

Horizon Club members, without Trilegiant's knowledge or consent, and *automatically transferred* the members into the new program so as to avoid its payment obligations to Trilegiant.

28.  On information and belief, at the same time BP was telling Trilegiant that it would be discontinuing the Horizon Program and independently soliciting former Horizon Club members for its new program, BP was secretly in the process of transferring the Horizon Club members directly into its new program.

29.  On information and belief, BP sent letters, without Trilegiant's knowledge or consent, to all of Trilegiant's Horizon Club members wherein BP automatically enrolled the Horizon Club members in the new program. The letters stated:

> Thank you for being a valued BP Horizon cardmember. The purpose of this letter is to inform you that the BP Horizon card is being discontinued and will be *replaced by* the new BP Multicard program . . . In June 2002, you will receive the new BP Multicard to *replace* your existing BP Horizon account, which will no longer be valid.

EXHIBIT 6, LETTER A SENT TO HORIZON CLUB MEMBERS BY BP.

30.  By secretly transferring the Horizon Club member into the new program, BP has wrongfully appropriated Trilegiant's Horizon Club members and the Profits due to Trilegiant pursuant to the Agreement, as amended. BP is in breach of the Agreement and in violation of law.

## COUNT I
## (BREACH OF CONTRACT)

31. Trilegiant hereby repeats and realleges the allegations contained Paragraphs 1 through 30 above as though fully set forth herein.

32. Pursuant to the Agreement and the Amendment to the Agreement, BP is obligated to pay to Trilegiant on a monthly basis 36.5% of the Profits generated by the Horizon Club.

33. Upon information and belief, BP has wrongfully appropriated the Horizon Club Members by secretly transferring Horizon Club Members into the new program to avoid its ongoing obligations to Trilegiant in breach of the Agreement, as amended, and in violation of law.

34. BP has failed to provide monthly payments to Trilegiant in breach of the Agreement, as amended, and in violation of law.

35. BP's breach of the Agreement has resulted in a significant financial loss to Trilegiant.

## COUNT II
## (BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING)

36. Trilegiant hereby repeats and realleges the allegations contained Paragraphs 1 through 35 above as though fully set forth herein.

37.     The Agreement and the Amendment to the Agreement are contracts that contained within them the implied covenant of good faith and fair dealing.

38.     Upon information and belief, BP misrepresented its actions to Trilegiant and has wrongfully appropriated the Horizon Club members by secretly transferring Club Members into the new program to avoid its ongoing obligations to Trilegiant in breach of its duty of good faith and fair dealing.

39.     Trilegiant has been damaged by BP's breach of the implied covenant of good faith and fair dealing.

## COUNT III
### (VIOLATION OF CONNECTICUT UNFAIR TRADE PRACTICE)

40.     Trilegiant hereby repeats and realleges the allegations contained Paragraphs 1 through 30 and 36-39 above as though fully set forth herein.

41.     At all times material to this action, BP has and was engaged in trade or commerce in the State of Connecticut within the meaning of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a et seq.

42.     BP is a "person" within the meaning of Conn. Gen. Stat. § 42-110a.

43.     By the acts alleged herein, BP has engaged in unfair methods of competition or unfair or deceptive acts or practices in the conduct of trade or commerce in violation of CUTPA, Conn. Gen. Stat. § 42-110b.

44.     As a direct and proximate result of BP's actions and conduct, Trilegiant has suffered and continues to suffer an economic loss.

45.     BP has accordingly violated <u>Conn. Gen. Stat.</u> §§ 42-110b <u>et seq.</u>

46.     As a result of the actions of BP alleged in this Complaint, Trilegiant has suffered an ascertainable loss.

47.     Trilegiant claims damages, enhanced damages and an award of attorneys' fees, all as provided pursuant to <u>Conn. Gen. Stat.</u> §42-100g.

48.     A copy of this Complaint is being mailed to the Attorney General and the Commissioner of Consumer Protection of the State of Connecticut pursuant to <u>Conn. Gen. Stat.</u> § 42-110g(c).

## COUNT IV
## (TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS)

49.     Trilegiant hereby repeats and realleges the allegations contained Paragraphs 1 through 48 above as though fully set forth herein.

50.     Trilegiant's financial success is due in large part to revenues from renewal billings like those generated by the Horizon Club members.

51.     Trilegiant has a contractual relationship with the Horizon Club members wherein Trilegiant provides membership services to the Horizon Club members as set forth in the Membership Agreement. EXHIBIT 2.

52. BP knew of Trilegiant's contractual relationship with the Horizon Club members and tortiously interfered with that contractual relationship by secretly transferring the Horizon Club members to the new program without Trilegiant's knowledge or consent.

53. As a result of BP's tortious interference with Trilegiant's contractual relations with the Horizon Club members, Trilegiant has been and will continue to be damaged.

## COUNT V
## (UNJUST ENRICHMENT)

54. Trilegiant hereby repeats and realleges the allegations contained Paragraphs 1 through 53 above as though fully set forth herein.

55. BP has derived economic benefits from its aforementioned wrongful conduct to which it is not entitled, and it should give to Trilegiant the fees, compensation and remuneration of which Trilegiant will be deprived and that BP will gain from its wrongful conduct.

56. BP has been unjustly enriched by its conduct at Trilegiant's expense and detriment.

57. Trilegiant has been damaged by BP's actions.

## COUNT VI
## (BREACH OF CONTRACT-BILLINGS)

58. Trilegiant hereby repeats and realleges the allegations contained in Paragraphs 1-57 above as though fully set forth herein.

59. Pursuant to the Agreement and the Amendment to the Agreement, BP is obligated to pay 36.5% of the profits generated by the Horizon Club to Trilegiant on a monthly basis.

60. "Profit" is defined by the Agreement as gross Horizon Club sales, less cancellations, credits and refunds and less certain specified costs incurred by Trilegiant.

61. The Agreement provides that during and after the term of the Agreement, Trilegiant and BP are required to reconcile the membership billings and determine the profits to be shared.

62. Each month, Trilegiant would perform the aforementioned reconciliation and determine the profits to be shared. It would then forward a billing statement to BP reflecting its calculations and setting forth the commissions due to each of the parties.

63. In April and May 2002, Trilegiant sent BP billing statements pursuant to the parties' agreed upon procedure.

64. To date, BP has failed to pay Trilegiant its commission for April and May, 2002.

65. BP's failure to remit payment to Trilegiant constitutes a breach under the terms of the Agreement and the Amendment to the Agreement, and is in violation of the law.

66. BP's breach of the Agreement and the Amendment to the Agreement has resulted in a significant financial loss to Trilegiant.

## **PRAYER FOR RELIEF**

WHEREFORE, cause having been shown, Trilegiant Corporation respectfully requests that this Court grant the following relief:

    (a)    On the First Count, compensatory damages;

    (b)    On the Second Count, compensatory damages;

    (c)    On the Third Count, compensatory and punitive damages pursuant to Conn. Gen. Stat. § 42-110g(a);

    (d)    On the Fourth Count, compensatory, punitive and special damages;

    (e)    On the Fifth Count, compensatory damages;

    (f)    On the Sixth Count, compensatory damages;

    (g)    Attorneys' fees pursuant to Conn. Gen. Stat. § 42-110g(d) and Conn. Gen. Stat. § 30-53(b); and

      (h)    Interest, costs, and such other relief as this Court may deem just and proper.

| | |
|---|---|
| Dated: September 19, 2003 | THE PLAINTIFF,<br>TRILEGIANT CORPORATION<br>BY CUMMINGS & LOCKWOOD, LLC<br>ITS ATTORNEYS<br><br>By _/s/ illegible signature_<br>ROBERT P. DOLIAN (CT 04278)<br>KAREN L. ALLISON(CT 021849)<br>Four Stamford Plaza<br>107 Elm Street<br>Stamford, CT 06902<br>(203) 327-1700<br>(203) 351-4534 (fax) |

.StmLibl:1023932.1 09/18/03

-15-