UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TRILEGIANT CORPORATION, | : CIVIL ACTION NO. |
| | : 3:02CV2237 (MRK) |
| Plaintiff, | : |
| VS. | : |
| | : |
| BP PRODUCTS NORTH AMERICA INC., | : |
| | : |
| Defendant. | : |

FEBRUARY 27, 2004

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S REQUEST TO AMEND**

Defendant, BP Products North America Inc. ("BP"), respectfully submits this Reply Memorandum of Law in support of its Motion for Permission to Amend Answer to Add Counterclaims against the plaintiff, Trilegiant Corporation ("Trilegiant").

I. **Legal Standard**

The standards for permitting the addition of a counterclaim under Rule 13(f) generally coincide with the standards for permitting amendment of a pleading under Rule 15(a). See Banco Para El Comercio Exterior De Cuba v. First National City Bank, 744 F.2d 237, 243 (2d Cir. 1981); and see Resorts & Motel Advancement Dev. Agency v. Sloan, 1995 U.S. Dist. LEXIS 8930, *2-3 (S.D.N.Y., March 8, 1995). Amendment is to be freely granted, especially where the proposed counterclaim is compulsory. See Barnes Group, Inc. v. C & C Prods., Inc., 716 F.2d 1023, 1035 n.35 (4th Cir. 1983) (citing 3-13 Moore's Federal Practice § 13.43); Gabourel v. Bouchard Transp. Co., 901 F. Supp. 142, 144 (S.D.N.Y, October 19, 1995); Concord Asset Management v. Intercredit Corp., 1994 U.S. Dist. LEXIS 5854 (S.D.N.Y., May 5, 1994).

A party that is not permitted to amend to assert a compulsory counterclaim may suffer significant prejudice as he is left with little or no recourse.  See id. [1]

Without a showing of bad faith or undue prejudice, delay, the necessity of further discovery, or the expenditure of additional time and resources in litigating matters raised by the amendment, standing alone, will not justify denial of leave to amend.  See Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993); State Teachers Retirement Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981)).

II.   **Argument**

Because the centerpiece of BP's counterclaims is breach of the same agreement that Trilegiant alleges was breached, and because the claims raised by BP regarding Trilegiant's repeated overcharging of servicing fees directly impact the damage claims advanced by Trilegiant, the interests of judicial economy and fairness dictate that BP's motion to amend be granted.  No logical reason exists for not resolving at one time in the same case the competing claims for breach of the same contract brought by the contract parties, especially when they involve overlapping factual issues.  The factual and legal issues are intertwined, and Trilegiant will not suffer any prejudice if BP's counterclaims are heard. (See BP's Memorandum of Law dated February 2, 2004).

---

[1] It is unclear whether the proposed counterclaims are compulsory. While the counterclaims do evolve from, and claim breaches of, the same agreement that is the subject of plaintiff's claims, they allege breaches of different provisions. Defendant submits that, for the reasons set forth herein, regardless of whether the counterclaims are compulsory or permissive, the amendment should be allowed.

A.   BP's Counterclaims Should be Heard in the Interests of Judicial Economy and Fairness.

BP's counterclaims arise out of the same contract upon which Trilegiant has based all of its claims: the BP Horizon Agreement dated August 7, 1992 ("Agreement"). Both parties' claims are based upon the rights and obligations flowing from the Agreement. Moreover, the issues presented by BP's counterclaims are factually and legally intertwined with Trilegiant's claim for damages.

Trilegiant alleges that it was denied a share of future program revenues to which it was entitled under the Agreement. BP defends those claims by asserting that the termination provisions of Sections 14 and 15 of the Agreement terminate Trilegiant's right to share in future revenues where it, rather than BP, terminates the Agreement.[2] BP also maintains that under the terms of the Agreement,[3] Trilegiant was not entitled to any future revenues where, as here, BP ultimately discontinued the program. BP's counterclaims allege that Trilegiant breached the Agreement by overcharging BP the "Cost of Service" (hereinafter referred to as the "Service Fee") provided under Section 3(b) of the Agreement. As such, it will be necessary for the Court to interpret the terms of the Agreement in order to determine the validity of both Trilegiant's claims and BP's counterclaims.

---

[2] See Agreement, ¶¶ 14, 15 (attached to Plaintiff's Complaint, dated November 18, 2002).

[3] See id.

Obviously, Trilegiant does not challenge that BP's counterclaims allege breach of the Agreement. It necessarily has argued, therefore, that the claims should not be resolved in the same case simply because the competing claims allege breaches of different provisions of the Agreement. However, separating the parties' opposing claims for breach of contract here would be truly inefficient because the claims are inextricably intertwined. The narrow issue raised in BP's counterclaims - whether Trilegiant's calculation and collection of servicing fees under Section 3(b) of the Agreement is consistent with its terms – is central to Trilegiant's damages claim.

Trilegiant bases its damages claim upon the amounts it was entitled to be paid under the Agreement, one component of which was the annual Service Fee per member. Trilegiant's damage claim is based on a calculation purporting to reflect the present value of the future income stream Trilegiant claims it was entitled under the Agreement. A critical (and financially material) component in the damage calculus is the amount of the Service Fee under Paragraph 3(b) of the Agreement. Section 3(b) of the Agreement provides for the initially set Service Fee of $4.15 per member, to be adjusted yearly based on Trilegiant's actual costs for providing "oil rebate" discounts as a service. Trilegiant's damage summary, one page of which is attached for example as Exhibit A hereto, reveals an annual per member Service Fee of $4.32. The central claim in BP's counterclaim is that the $4.32 is significantly overstated, and that Trilegiant has overcharged BP since 1992. BP alleges that the actual service fee should have been adjusted to an amount not in excess of $2.08 per member, and seeks recovery of significant money damages. In other words, the issue of the proper service charge is relevant to <u>both</u> the claims and the proposed counterclaims.

In its objection, Plaintiff attempts to distinguish its claims from BP's counterclaims by characterizing the latter as focusing only upon the parties' dealings before Trilegiant's termination, and stating that its own claims center upon the relationship thereafter. (See Plaintiff's Objection, filed February 12, 2004). For purposes of determining whether the claims are logically related, however, it matters not that they arose at a different point in time because they are each based upon the same underlying contract, and share a significant common issue. Additionally, BP's counterclaims are, in fact, directed at Trilegiant's over-billing both before and after August 15, 2000, the effective date of Trilegiant's letter of termination dated October 27, 1999.

B.  BP's Counterclaims Will Not Cause Trilegiant to Suffer Prejudice

In addition to the reasons set forth in BP's Memorandum of Law dated February 2, 2004, Trilegiant will not be prejudiced if BP's counterclaims are heard because the parties are still in the middle of expert discovery and because little, if any, additional time for discovery is necessary in order to address the limited factual matters that BP's counterclaims present.

Consistent with the Court's Modified Scheduling Order dated December 31, 2003, BP's expert disclosure was served on February 17, 2004, and the deposition of BP's proposed expert is scheduled for March. Trilegiant is also aware of BP's intention to file a dispositive motion on or before April 15, 2004, which will extend the proposed "trial ready" date of May 15, 2004 until

the parties file their Joint Trial Memorandum (which is not due until 30 days after the Court's decision on BP's dispositive motion).

Very little discovery is needed to be ready to try the factual issues raised in the counterclaims. As set forth above, the amount of the Service Fee is relevant to Trilegiant's claims and has already been the subject of some discovery. New fact discovery would relate only to historical information in the hands of Trilegiant reflecting the number of members enrolled in the program since its inception. Providing those documents will cause almost no delay, especially in a case where discovery is not yet concluded, and no trial date is set. We expect that an additional thirty (30) days to conduct discovery relating to the counterclaims should be sufficient for the parties adequately to prepare to prosecute and defend the counterclaims. [4]

For all the foregoing reasons, BP's Motion for Permission to Amend Answer to Add Counterclaims should be granted.

---

[4] As an aside, Trilegiant's accusation that BP is asserting these counterclaims in order to exert settlement leverage is silly. BP learned of the potential issue giving rise to these counterclaims during Greg Hilinki's deposition on October 27, 2003, and after reviewing Trilegiant's supplemental document production that BP received on November 5, 2003 reflecting the overcharges. BP immediately advanced these claims after verifying that Trilegiant had, in fact, overcharged BP for years. While advancing a meritorious counterclaim should reasonably change the settlement dynamic, the reason for injecting the claim at this point is simply that BP was unaware of the claim and its supporting evidence until late in discovery .

DEFENDANT,
BP PRODUCTS NORTH AMERICA INC.

By: _____
Steven M. Greenspan (ct00380)
Brian D. Porch, Jr. (ct236500)
One Canterbury Green
Stamford, CT 06901-2047
(203) 977-7300
Its Attorneys

## **CERTIFICATION**

    THIS IS TO CERTIFY that a copy of the foregoing was mailed this 27th day of February, 2004, via U.S. regular mail, postage prepaid, to

Robert P. Dolian
M. Julie Bonazzoli
Cummings & Lockwood LLC
Four Stamford Plaza
107 Elm Street
Stamford, CT 06902


                                                                            Brian D. Porch, Jr.