UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TRILEGIANT CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV. NO: 3:02 CV2237 (MRK) |
| | ) | |
| | ) | |
| BP PRODUCTS NORTH AMERICA, INC. | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | July 23, 2004 |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF APPLICATION OF CONNECTICUT LAW TO TORTIOUS INTERFERENCE WITH CONTRACT CLAIM**

The Plaintiff, Trilegiant Corporation ("Trilegiant"), by and through its attorneys, Cummings & Lockwood, LLC, respectfully submits this Memorandum of Law in support of the application of Connecticut law to its tortious interference with contract claim. In support thereof, Trilegiant states the following:

**ARGUMENT**

On or about November 18, 2002 Trilegiant filed a five-count Complaint against BP Products North America Inc. ("BP"), including a count for tortious interference with contract. BP, in its Proposed Findings of Fact and Conclusions of Law dated July 2, 2004, argued that

Illinois law should apply to Trilegiant's tortious interference with contract claim. As demonstrated below, this argument is misguided. Based on Connecticut choice of law principles, Connecticut law should clearly be applied.

**I.    A CONFLICT OF LAW ANALYSIS IS APPROPRIATE BECAUSE THERE IS A SUBSTANTIVE DIFFERENCE BETWEEN CONNECTICUT AND ILLINOIS LAW**

A conflict of law analysis only applies when the application of law of either jurisdiction would produce conflicting results. Dugan v. Mobile Medical Testing Services, Inc., 265 Conn. 791, 798, 830 A.2d 752 (2003), citing, R. Leflar et al., *American Conflicts Law* (4th Ed.1986) § 92, p. 272. In this instance, there is a significant enough difference between Connecticut and Illinois tortious interference with contract law to warrant a conflict of laws analysis. Under Illinois law, a finding of tortious interference with contract requires: (1) The existence of a valid an enforceable contract between the plaintiff and another; (2) the defendant's awareness of the contractual relationship between the plaintiff and another; (3) the defendant's intentional and unjustifiable inducement of a breach of contract; (4) a breach of contract by the other caused by the defendant's wrongful acts; and (5) damage to the plaintiff. Fieldcrest Builders, Inc. v. Antonucci, 311 Ill.App.3d 597, 611, 724 N.E.2d 49, 243 Ill.Dec. 740 (1999). Under Connecticut law, in contrast, the elements are as follows: (1) The existence of a contractual or beneficial relationship; (2) the defendants' knowledge of that relationship; (3) the defendants' intent to

2

interfere with that relationship; (4) the interference was tortious; and (5) a loss suffered by the plaintiff that was caused by the defendants' tortious conduct.  Longley v. Suffield Academy, 2004 WL 728554 (Conn.Super. 2004) at *3, citing, Collum v. Chapin, 40 Conn.App. 449, 671 A.2d 1329 (1996).  The main distinction between Connecticut and Illinois law is that under Connecticut law, it is not essential to the cause of action that the resultant injury from the tort be an actual breach of contract, while under Illinois law it is required. See Wellington Systems, Inc., v. Redding Group, Inc., 49 Conn.App. 152, 167-68 714, A.2d 21 (1998); Goldman v. Feinberg, 130 Conn. 671, 674, 37 A.2d 355 (1944); Futurevision, Inc. v. Dahl, 139 Ill.App.3d 61, 66, 487 N.E.2d 127, 93 Ill.Dec. 683 (1985) ("A necessary prerequisite to the maintenance of an action for tortious interference with a contract [under Illinois law] is defendant's intentional and unjustified inducement of a breach of the contract").  Therefore, this court should apply a conflict of laws analysis.

## II. THE COURT SHOULD APPLY CONNECTICUT'S CONFLICT OF LAWS RULES

A federal court sitting in diversity must follow the conflict of law rules of the forum state to resolve conflict of law questions. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).  Connecticut follows the "most significant relationship" analysis advanced by the Restatement (Second) Conflict of Laws.  O'Connor v. O'Connor, 201

Conn. 632, 650, 519 A.2d 13 (1986). In that regard, § 145 of the Restatement (Second) Conflict of Laws provides that "[t]he rights and liabilities of the parties with respect to an issue are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6."

Section 6 of the Restatement, in turn, provides: "(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law. (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protections of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied." See also O'Connor 202 Conn. at 650-51.

Concerning § 6 of the Restatement (Second) Conflict of Laws, although the principles of certainty and ease of application must be taken into account, the Restatement explicitly cautions against attaching independent weight to these factors. Id. at 651. As comment i to § 6 states: "In a rapidly developing area, such as choice of law, it is often more important that good rules be developed than that predictability and uniformity of result should be assured through continued adherence to existing rules." Id. Further, comment j cautions that the policy in § 6(2)(g) should

4

"not be overemphasized, since it is obviously of greater importance that choice-of-law rules lead to desirable results." Id. at 651-52.

As articulated in O'Connor, § 145(2) of the Restatement establishes the black-letter rules to facilitate the application of the principles of § 6 to tort cases. "Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the residence, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. O'Connor, 202 Conn. at 652. The court "must also consider the relevant policies and interests of each state involved." Id. These factors are to be evaluated according to their relative importance with respect to the particular issue. Id. A court must not merely count contacts but rather should consider which contacts are most significant and to determine where those contacts are found.

III.   UNDER THE MOST SIGNIFICANT RELATIONSHIP TEST,
       CONNECTICUT LAW APPLIES BECAUSE CONNECTICUT HAS A
       VITAL INTEREST IN PROTECTING ITS CITIZENS' CONTRACTUAL
       RIGHTS

Applying the above factors, the injury occurred in Connecticut and the party that suffered the injury, Trilegiant, is a Connecticut corporation. BP is an Illinois corporation whose conduct caused the injury, and the relationship between the parties was centered among a number of

different states.  BP concedes in its Proposed Conclusions of Law that the Restatement's factors "suggest that Illinois and Connecticut have equal relationship to the parties."  Def. Proposed Findings of Fact and Concl. of Law at p. 22.  However, BP argues that the "state interest factor" strongly favors application of Illinois law.  Id.  In support of this argument, BP states the following: (1) the Illinois standard for tortious interference with contract is succinctly and clearly defined, and (2) that because the law is clearly defined, it facilitates business development and growth by informing Illinois businesses of which types of transactions they may lawfully execute and those that will subject them to liability.  Both these assertions miss the mark.

    First, contrary to BP's claim, there is nothing ambiguous about Connecticut's tortious interference with contract law.  The only major difference between the two states is that under Connecticut law, the resultant injury from the tort need not be a breach of contract.  BP is mistaken when it argues that under Connecticut law, "the existence of a contract is not a required element for liability for tortious interference."  Def. Proposed Findings of Fact and Concl. of Law at p. 39.  In fact, "it is well-settled that the tort of interference with contractual relations only lies when a third party adversely affects the contractual relations of two other parties." See Wellington Systems, Inc., v. Redding Group, Inc., 49 Conn.App. 152, 168, 714 A.2d 21 (1998), citing, Paint Products Co. v. Minwax Co., Inc., 448 F.Supp. 656, 658 (D.Conn. 1978) (internal citations omitted).

BP appears to have confused tortious interference with business expectancy with tortious interference with contract. The two are distinct, although Connecticut courts often lump them together. Id. Even if there was any latent ambiguity in Connecticut's law, it would carry little weight, given the Restatement's caution that ease in determination and application of the law should not be overemphasized. Restatement (Second) Conflict of Laws § 6 cmt. i, j.

      Second, whether the law facilitates Illinois business development and growth is not of primary importance. Even if this argument had merit, when taken to its logical conclusion, it produces undesirable results. BP states that the Illinois standard "informs Illinois businesses which types of transactions they may lawfully execute and those that will subject them to liability." Def. Proposed Findings of Fact and Concl. of Law at pp. 22-23. However, a global and sophisticated corporation such as BP, which regularly transacts business outside the state of Illinois, must expect to be subject to the laws of the other jurisdictions where it chooses to do business. Therefore, BP should be aware that when it conducts business outside of Illinois, it will subject itself to other states' statutory, regulatory and common law requirements. It cannot reasonably expect to be accountable only to the laws of its place of incorporation. Further, BP's argument would encourage bad corporate citizens to locate in jurisdictions with the most lax tort and regulatory environment so that they could inflict harm on citizens of other jurisdictions with impunity. Simply because Connecticut permits a finding of liability for tortious interference

injuries other than breach of contract should not permit BP to seek the safer confines of Illinois law at the expense of non-Illinois residents who choose to do business with BP.

When considering state interest, "the purpose sought to be achieved by the relevant tort rules of the interested states, and the relation of these states to the occurrence and the parties, are important factors to be considered in determining the state of most significant relationship." Restatement (Second) Conflict of Laws § 145 cmt. c.  Connecticut tort laws are presumably designed to protect Connecticut residents and corporations from the tortious conduct of others, so that they may be compensated for the losses they suffer within the scope of their legally recognized interests. *Prosser and Keeton on the Law of Torts*, § 1 (W. Keeton 5th ed. 1984) at pp. 5-6.  An examination of relevant case law confirms that courts applying the Restatement (Second) Conflict of Laws rules, or some hybrid thereof, have held that the state where the injured party was located and where the injury occurred has the most significant relationship for tortious interference claims.  See e.g., Forum Financial Group v. Pres. and Fellows of Harvard College, 173 F.Supp.2d 72, 86 (D. Me. 2001) (applying Restatement (Second) Conflicts of Laws § 145 test, Maine law rather than Massachusetts law determinative of fraud and tortious interference claims where Plaintiffs were domiciled in Maine, Defendants were domiciled in Massachusetts and injury caused by Defendants occurred in Maine or in Russia); The Score Board, Inc., v. Upper Deck Co., 959 F.Supp. 234, 238 n.4 (D.N.J. 1997) (applying New Jersey governmental interest analysis, New Jersey rather than California law determinative of tortious

interference claim where Plaintiff was headquartered in New Jersey, Defendant was headquartered in California, and injury occurred in New Jersey); <u>DP Service, Inc. v. AM International</u>, 508 F.Supp. 162, 165 (N.D. Ill. 1981) (applying Illinois "most significant contacts" choice of law rule, Illinois law rather than California law determinative of tortious interference with prospective economic advantage claim where Plaintiff was incorporated and did business in Illinois, injury occurred in Illinois, Defendant incorporated in Delaware and did business in California, and alleged tortious conduct conceived in California).

Connecticut has a profound interest in protecting the contractual rights of its corporate citizens from interference by tortfeasors from outside the state. This interest far outweighs any interest Illinois might have in facilitating and informing its commercial industry. Here, since the injury in this case was suffered by a Connecticut corporation and occurred in Connecticut, Connecticut has the most significant relationship to the case and its law should apply to the tortious interference claim.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully asks that Connecticut law apply to its tortious interference with contract claim.

        THE PLAINTIFF
        TRILEGIANT CORPORATION


By_____
   Robert P. Dolian (CT 04278)
   Kevin P. Broughel (CT 25838)
   Cummings & Lockwood LLC
   Four Stamford Plaza
   107 Elm Street
   Stamford, CT  06902
   Tel.  (203) 327-1700
   Fax  (203) 351-4534

## CERTIFICATE OF SERVICE

This is to certify that on this ___ day of July, 2004, a copy of the foregoing Plaintiff's Proposed Findings of Fact was served via facsimile and first-class U.S. Mail, postage prepaid, on:

>Steven M. Greenspan, Esq.
>Brian D. Porch, Jr., Esq.
>Day, Berry & Howard LLP
>One Canterbury Green
>Stamford, CT  06901-2047

                                        Kevin P. Broughel

.StmLib1:1068005.1 07/23/04