UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

TRILEGIANT CORPORATION,  : CIVIL ACTION NO.
: 3:02CV02237 (MRK)
Plaintiff,  : NEW HAVEN, CONN.
VS.  :
:
BP PRODUCTS NORTH AMERICA INC.  :
:
Defendant.  : AUGUST 6, 2004

**DEFENDANT'S SUPPLEMENTAL BRIEF**

Defendant, BP Products North America Inc. ("BP") respectfully submits this Supplemental Brief in support of its position that the Agreement between BP and SafeCard Services Inc. ("Trilegiant") dated August 3, 1992 ("Agreement") cannot be interpreted to afford Trilegiant any right to share in post-termination revenue where it chose to terminate the Agreement.

**I.    THE AGREEMENT IS CLEAR AND UNAMBIGUOUS.**

A contractual provision is only ambiguous if there is an indistinctness or uncertainty of meaning in the language used. See Morgan v. Morgan, 1994 Ohio App. LEXIS 2572, *8 (Ohio App., June 14, 1994) (citing 43 Ohio Jurisprudence 3d 431-432, Evidence and Witnesses, Sec. 569). The role of a court is to give effect to the intent of the parties to the agreement. See Fidelity & Casualty Ins. Co. v. Hartzell Bros. Co., 109 Ohio St. 566, 569 (1924). Generally, courts presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement. See Kelly v. Med. Life Ins. Co., 31 Ohio St.3d 130, 31 OBR 289, 509

N.E.2d 411, (1987), paragraph one of the syllabus; <u>Aultman Hosp. Assn. v. Community Mut. Ins. Co.</u>, 46 Ohio St.3d 51, 544 N.E.2d 920 (1989), syllabus.

It is undisputed here that both parties to the Agreement contemplated at the time it was executed that either party could terminate the Agreement. Paragraphs ¶¶ 14 and 15 of the Agreement are the only provisions pertaining to termination and the rights of the parties to share any post-termination revenues. (Exhibit 1.) Paragraph 14 does not provide any contractual basis for either party to receive post-termination revenues, but rather simply allows either party to terminate for any reason. (See <u>id</u>.) Paragraph 15 sets out the post-termination rights and obligations of the parties. (See <u>id</u>.) Subparagraphs 15(d) and 15(e) specifically set forth the very limited circumstances in which Trilegiant is entitled to continue to receive revenue from membership renewals after termination, neither of which apply here. (See <u>id</u>.)

Therefore, the parties to this contract demonstrated their mutual intent that the circumstances where Trilegiant shares in post-termination revenue are specifically identified. Their chosen language clearly manifests this shared intent. See <u>Kelly. Co.</u>, 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, (1987); <u>Aultman Hosp. Assn. v. Community Mut. Ins. Co.</u>, 46 Ohio St.3d 51, 544 N.E.2d 920 (1989).

It is well-established under Ohio law that where the terms in an existing contract are clear and unambiguous, the court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties. See <u>Alexander v. Buckeye Pipeline Co.</u>, 374 N.E.2d 146, 150 (Ohio, 1978); <u>Blosser v. Enderlin</u>, , 113 Ohio St. 121 (Ohio 1925); <u>Fidelity & Casualty Ins. Co. v. Hartzell Bros. Co.</u>, 109 Ohio St. 566, 569 (1924). "When the language of

a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." Westfield Ins. Co. v. Galatis, 100 Ohio St. 3d 216, 219 (Ohio, 2003) (internal citations omitted); Gulf Ins. Co. v. Burns Motors, Inc., 22 S.W.3d 417, 423, 43 Tex. Sup. Ct. J. 647 (Tex. 2000).

"The intent of the parties to a contract resides in the language they chose to employ in the agreement." Shifrin v. Forest City Enterprises, Inc., 64 Ohio St.3d 635, 638, 1992 Ohio 28, 597 N.E.2d 499 (Ohio 1992). Therefore, when contract terms are clear and unambiguous, courts will not, in effect, create a new contract by finding an intent which is not expressed in the clear language utilized by parties. See id.

## II. EVEN IF THE AGREEMENT IS CONSIDERED "SILENT" AS TO POST-TERMINATION RIGHTS WHERE TRILEGIANT TERMINATES, THE COURT CANNOT REWRITE THE AGREEMENT TO PROVIDE TRILEGIANT WITH ADDITIONAL RIGHTS.

Even where a contract is silent as to a given term, "a court may not read language or terms into a contract, nor can any be taken away by construction. . . . The courts nevertheless are justly prudent and careful in inferring covenants or promises, lest they make the contract speak where it was intended to be silent or make it speak contrary to what, as may be gathered from all the terms and the tenor of the contract, was the intention of the parties. It has been said that 'presumptions must not be indulged to defeat the manifest intention of the parties to the contract. The purpose is to promote such intention where the language of the parties is not clear. 'While much regard will be given to the clear intention of the parties, yet where the contract is entirely

-3-

silent as to a particular matter, the court will exercise great caution not to include in the contract by construction something which was intended to be excluded. . . .In Accordance with the maxim, 'expressio unius est exclusio alterius,' there can be no implied promise in a contract in relation to any matter that is specifically covered by the written terms of the contract itself." International Union, United Auto., etc. v. L. T. Patterson Co., 159 N.E.2d 923 (Ohio Misc., 1956); see also Portaro v. American Guarantee & Liability Ins. Co., 210 F. Supp. 411, 417 (D. Ohio, 1962); 30 O.J.2nd, 224, § 212.

In "instances, where a contract is silent, the court or jury who are called upon to imply an obligation on the other side which does not appear in the terms of the contract, must take great care that they do not make the contract speak where it was intentionally silent; and above all that they do not make it speak entirely contrary to what, as may be gathered from the whole terms and tenor of the contract, was the intention of the parties." East Ohio Gas Co. v. Akron, 81 Ohio St. 33, 54-55 (Ohio, 1909). Although Ohio courts recognize that "that which is plainly implied in the language of a contract is as much a part of it as that which is expressed," they "are justly prudent and careful in inferring covenants or promises, lest they make the contract speak where it was intended to be silent or make it speak contrary to what, as may be gathered from all the terms and the tenor of the contract, was the intention of the parties." Bush v. Callas, McCreary & Assoc., Inc., 1978 Ohio App. LEXIS 9476 (Ohio Ct. App., 1978).

Other jurisdictions, including Connecticut, adhere to the same principle. See Lakitsch v. Brand, 99 Conn. 388, 393-394 (Conn. 1923). Although there exists the concept of implying terms by necessity into a written contract, "[t]he question [is] not what the parties meant to bind themselves to do, nor what they supposed they had bound themselves to do, nor even what they

-4-

ought to have bound themselves to do; it is simply what they have, as manifested by their written words, bound themselves to do." Id. Additionally, where a party claims a right derived from a contract that is not expressly stated therein, the court ought to apply even more caution. See PGC Pipeline v. Louisiana Intrastate Gas, 791 F.2d 338, 339-340 (5th Cir. 1986). "That the contract is silent as to a "claimed" right simply means the right does not exist; silence is not grounds to supplement the terms of a written contract with implied rights. In contracts involving sophisticated parties, the courts have consistently and repeatedly held that "silence" on a claimed right means that the right does not exist and that written contracts cannot be supplemented by implied theories to create rights not explicitly contained in the contracts." Petroleo Brasileiro, S.A. Petrobas v. Sea Drilling Corp., 1987 U.S. Dist. LEXIS 11687, 3-4 (D. La., 1987) (quoting PGC Pipeline v. Louisiana Intrastate Gas, 791 F.2d 338, 339-340 (5th Cir. 1986)).

In this case, Trilegiant claims that it has a right to share in revenue post-termination despite the fact that Agreement does not expressly afford such rights where it elected to terminate the Agreement. In accordance with the authority cited above, such action would be improper.

### III. STATEMENTS MADE BY PARTY REPRESENTATIVES NINE YEARS AFTER THE 1992 AGREEMENT, CANNOT BE USED TO SUPPORT ANY IMPLIED OBLIGATION ON THE PART OF BP.

The statements made in documents in the years 2000 and 2001, many years after the Agreement was signed, by individuals not involved in its 1992 negotiation, drafting or execution, have no probative value as to the parties' intentions at the time of contracting.

Although Ohio courts recognize the doctrine of "practical construction" whereby, after a court determines a contract *is* ambiguous it may use the parties' subsequent conduct in order to imply their original intentions, conduct or admissions made years later by individuals *other* than those who originally drafted the contract are given very little, if any, weight. See Cincinnati Gaslight & Coke Co., 53 Ohio St. 278, 285-288 (Ohio, 1895); Leggett v. Missouri State Life Ins. Co., 342 S.W.2d 833, 853 (Mo., 1960); Boston & M. R.R. v. Peterborough R.R., 166 A. 275, 279 (N.H., 1933).

The court will only attempt to identify a "practical construction" given if the language of the contract is ambiguous. See Dannemiller Grocery Co. v. Bessler Disappearing Stairway Co., 1931 Ohio Misc. LEXIS 1161, 5-6 (Ohio Misc., 1931) ("where the meaning of a contract is clear, there is no need for practical construction". . . "the ambiguity must arise from the language of the contract itself and courts will not admit parole testimony to construe an ambiguity forced into the contract to strain the apparent meaning of the language"). For purposes of the "practical construction" doctrine, "the construction placed upon [a] contract by the successors of those who made it, or by public officers, is entitled to much less weight" than an interpretation would receive if made by the people who were involved in drafting it. Cincinnati Gaslight, 53 Ohio St. at 285-288.

Where conduct or admissions were made by people who were not involved in entering the original contract, "they may put their own construction upon the words used, but in so doing they are not acting out the mental understanding of the sense in which the words were used by those who made the contract or written instrument." Id; see also Leggett v. Missouri State Life Ins. Co., 342 S.W.2d 833, 853 (Mo., 1960) (holding that, for purposes of practical construction,

very little weight could be afforded to the conduct performed by successors to the school superintendent than would be afforded to the superintendent who signed the agreement at issue). "In such cases the acts and conduct of the parties in the performance of the contract, are only their construction of the meaning of the words used; and their construction of words used by others, should not override the construction to be placed thereon by the courts." Cincinnati Gaslight, 53 Ohio St. at 285-288.

In this case, statements made nine years after the parties entered into the Agreement by BP or Trilegiant employees who were not involved in its original execution that have no probative value in interpreting the parties' original intent. Additionally, the people that signed the Agreement on behalf of the parties had no contact with BP or Trilegiant representatives or consultants in 2000 and 2001. Finally, because the authors of the 2000 and 2001 statements are lay people, not lawyers, the Court is obviously in a better position to interpret these provisions of the Agreement. See id. Their opinions are legally irrelevant.

Moreover, courts will not apply the practical construction given by the parties' actions where their subsequent course of dealing is "much more ambiguous than the contract itself." Cincinnati Gaslight & Coke Co., 53 Ohio St. 278, 285-288 (Ohio, 1895)). (discussed below); see also B.F. Goodrich Co. V. American Motorists Ins. Co., 1986 U.S. Dist. Lexis 25205, 31-32 (D. Ohio, 1986) ("To have any value as a practical construction, the course of dealing should be uniform, unquestioned, and fully concurred in by both parties. A right claimed by one party, and from time to time denied or disputed by the other, though for the time being, conceded, cannot from such concessions, be regarded as established.")

In this case, the statements made by employees and consultants in 2000 and 2001 did not affirm any rights Trilegiant asserted, were inconsistent and, at times confusing. The statements reflect, at a minimum, a changing interpretation of the contract, and the parties, in the end acknowledged their disagreement regarding the interpretations both in July, 2000 and July, 2001. (See Exhibits 5, 18, 20, 58.)

Accordingly, the statements made by the representatives of the parties nine years after execution of the Agreement cannot be used to interpret the parties' original intent.

DEFENDANT,
BP PRODUCTS NORTH AMERICA INC.

By: *Brian Porch (CE)*
Steven M. Greenspan (ct00380)
Brian D. Porch, Jr. (ct23650)
One Canterbury Green
Stamford, CT 06901-2047
tel (203) 977-7300
fax (203) 977-7301
smgreenspan@dbh.com
bdporch@dbh.com
Its Attorneys

## CERTIFICATION

  THIS IS TO CERTIFY that a copy of the foregoing was hand delivered this 6th day of August, 2004 to

Robert P. Dolian
Kevin Broughel
Cummings & Lockwood LLC
Four Stamford Plaza
107 Elm Street
Stamford, CT 06902

_____
Brian D. Porch, Jr.

71243545_1.DOC  001829-03800
August 6, 2004 3:04 PM